**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| EARL HILL, | : | |
|     **Plaintiff** | : | |
| | : | No. 1:22-cv-01176 |
|     v. | : | |
| | : | (Judge Kane) |
| UNITED STATES OF AMERICA <u>et al.</u>, | : | |
|     **Defendants** | : | |

**<u>MEMORANDUM</u>**

<u>Pro se</u> Plaintiff Earl Hill ("Plaintiff"), a federal prisoner, is currently incarcerated at the Allenwood Low Security Federal Correctional Institution ("FCI Allenwood Low") in White Deer, Pennsylvania. He commenced the above-captioned action by filing an original complaint against three (3) medical professionals based upon events that allegedly occurred while he was incarcerated at FCI Allenwood Low. Pursuant to the Prison Litigation Reform Act of 1995,[1] the Court previously reviewed Plaintiff's original complaint and concluded that it failed to state a claim upon which relief could be granted. Thus, the Court dismissed the original complaint, but without prejudice to Plaintiff filing an amended complaint. Now before the Court is Plaintiff's amended complaint. For the reasons set forth below, the Court concludes that the amended complaint fails to state a claim upon which relief can be granted. Accordingly, the Court will dismiss the amended complaint, but without prejudice to Plaintiff's final opportunity to amend his pleading.

---

[1] <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996) ("PLRA").

I.     **BACKGROUND**

On July 27, 2022, Plaintiff filed his original form civil rights complaint against the following individuals, all of whom appear to have worked at FCI Allenwood Low during the period of time relevant to his claims: (1) "Dr. Moclock" ("Moclock"), a physician; (2) "PA Piedro" ("Piedro"), a physician assistant; and (3) "Dr. Ball" ("Ball"), an orthopedic surgeon.[2] (Doc. No. 1 at 2-3.)   Plaintiff neglected to indicate whether his action was one brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, or <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).  (<u>Id.</u> at 1.)  Because, however, Plaintiff attached a document to his original complaint, titled "Claim for Damage, Injury, or Death[,]" which was filed with the Federal Bureau of Prisons ("BOP") and related to the same events described here (Doc. No. 1-1 at 1), the Court presumed that Plaintiff filed his original complaint under the FTCA.[3]  (Doc. No. 11 at 1.)

For the most part, Plaintiff's original complaint was bare and simply referred to the document that he attached thereto—<u>i.e.</u>, a document titled, "Supplemental Information to OMB NO. 1105-008."  (Doc. No. 1 at 7-10.)  This document appeared to pertain to Plaintiff's claim for damage, injury, or death that he had filed with the BOP.  (<u>Id.</u>)  And, in this document, Plaintiff set forth the following allegations.

Plaintiff alleged that, on January 21, 2021, as a result of a gastrointestinal infection, he was placed in the Special Holding Unit ("SHU") at FCI Allenwood where he experienced a

---

[2]  To be clear, Plaintiff failed to identify a workplace or address for Defendant Ball in his original complaint.  Plaintiff has since provided this information in his amended complaint. (Doc. No. 15 at 3.)

[3]  The Court directed Plaintiff to clarify the nature of his action in his amended complaint and to also state facts in support of his alleged cause of action.  (Doc. No. 11 at 1 n.1.)

fever, chills, vomiting, diarrhea, abdominal pains, and dehydration.  (Id. at 7.)  As a result of this infection, he alleged that he also experienced dizziness and disorientation, which caused him to fall on a concrete floor.  (Id.)  It was later determined that he had fractured his hand.  (Id.)

Despite these circumstances, Plaintiff alleged that minimal care was provided to him. (Id.)  In support, he alleged that, after his hand was placed in a cast, his condition worsened, and he experienced a loss of sensation, strength, and use in his hand.  (Id. at 8.)  Plaintiff alleged that he was examined by Defendant Ball, who performed a carpal tunnel release surgery on him. (Id.)  Plaintiff alleged, however, that following this surgery, his arm swelled and that the "swelling tore the stiches and staples."  (Id. (stating that his arm became "extremely discolored and swollen").)

Plaintiff asserted that, even though he is over fifty (50) years old with cardiac conditions, he was never prescribed a diuretic or antibiotic prior to his surgery.  (Id. (acknowledging that he was prescribed other medications).)  Plaintiff also asserted that he sent an email to his "PA" on January 25, 2021, which communicated that he needed bandages and for his wounds to be cleaned, as well as an email to "Medical" on February 21, 2021, which communicated the continued loss of function and use of his arm and that he needed diuretics and an arm sling.  (Id. at 9.)

Plaintiff claimed that, eventually, "the doctor" came to the "Housing Unit."  (Id.)  The doctor "took away the only meaningful relief with Lasik and the severe swelling returned in just hours[.]"  (Id.)  Plaintiff alleged that, since that time, the only post-operative physical therapy he has received is a "xeroxed copy of a wrist posture exercise."  (Id.)   Although Plaintiff acknowledged that, "[i]n March of 2021," he was provided with a Trans Epidermal Nerve Stimulator ("TENS"), he asserted that the "staff" did not show him how to use, or otherwise

provide him with instructions on the settings of, this device.  (Id. (stating that "another inmate" showed him how to properly use this device).)  In any event, Plaintiff asserted that the TENS device does not provide him with any relief.  (Id.)

In connection with all of these allegations, Plaintiff claimed in his original complaint, and in the attached document titled "Supplemental Information to OMB NO. 1105-008," that his fractured hand has caused him pain (id. at 5), as well as ongoing limitations in his "motion and function."  (Id.; id. at 9-10 (stating that he is unable to "grasp, grip, carry, push & pull any items" without experiencing "radiating pain from [his] hand into [his] forearm").)  As for relief, Plaintiff sought monetary damages.  (Id. at 5.)

On November 28, 2022, the Court granted Plaintiff leave to proceed in forma pauperis, conducted an initial review of his original complaint, and dismissed it for failure to state an FTCA claim upon which relief could be granted.  (Doc. Nos. 11, 12.)  More specifically, the Court concluded that Plaintiff's original complaint only named individual defendants (i.e., Defendants Moclock, Piedro, and Bell), but did not name the United States as a defendant, even though the United States is the only proper defendant in an FTCA action.  (Doc. No. 11 at 6-7.) The Court granted Plaintiff leave, however, to file an amended complaint in order to cure this deficiency.  (Id. at 7-8; Doc. No. 12 at 2.)

Thereafter, on January 20, 2023, Plaintiff filed an amended form civil rights complaint against the United States and Defendants Moclock, Piedro, and Ball.  (Doc. No. 15 at 1-3.)  In his amended complaint, Plaintiff has clarified that he is asserting a claim under the FTCA, as well as a claim pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).  (Id. at 1.)  Plaintiff's amended complaint, much like his original complaint, is bare and simply refers to the document he attached thereto—i.e., the "Supplemental Information to OMB

4

NO. 1105-008" document.  (Id. at 7-10.)  This is the same document that Plaintiff attached to his

original complaint.[4]  Compare (Doc. No. 1 at 7-10) with (Doc. No. 15 at 7-10).  Thus, the factual

allegations underpinning Plaintiff's original complaint and Plaintiff's amended complaint are

identical.

However, for the first time in his amended complaint, Plaintiff expressly sets forth the

following two (2) claims: (1) "[t]he BOP/United States acted negligently and with deliberate

indifference by failing to provide proper treatment and follow-up care, resulting in permanent

damage/injury. (FTCA)[;]" and (2) Defendants "[Moclock, Piedro, and Ball] acted with

deliberate indifference in violation of Petitioner's [Eighth] Amendment rights in their roles

acting under color of federal law. (Bivens)[.]"  (Id. at 5 (emphasis added).)  As for relief,

Plaintiff seeks monetary damages.  (Id.)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil

action in which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon

which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1).

District courts have a similar screening obligation with respect to actions filed by prisoners

proceeding in forma pauperis and prisoners challenging prison conditions.  See id.

§ 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines

that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42

U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss

---

[4]  Plaintiff has also attached the "Claim for Damage, Injury, or Death" that he filed with the
BOP, as well as various related administrative remedy documents, and medical records.  (Doc.
No. 15 at 11-24.)

any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999). To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of

truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

## III.   DISCUSSION

### A.   The FTCA

"[T]he FTCA waives the sovereign immunity of the United States in its district courts for tort claims 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances [in which] the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'"  Lomando v. United States, 667 F.3d 363, 372 (3d Cir. 2011) (quoting 28 U.S.C. § 1346(b)(1) (alterations in original)).  It "'does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court.'"  See id. (quoting In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 362 (3d Cir. 2001)); CNA v. United States, 535 F.3d 132, 141 (3d Cir. 2008) (explaining that "'[t]he cause of action in an FTCA claim . . . must come from state tort law").  For that reason, "'the extent of the United States' liability under the FTCA is generally determined by reference to state law.'"  See Lomando, 667 F.3d at 372-73 (quoting In re Orthopedic, 264 F.3d at 362).

Here, Plaintiff's amended complaint asserts a claim for negligence against the United States.  (Doc. No. 15 at 5.)  Generally speaking, "[n]egligence is the absence of ordinary care that a reasonably prudent person would exercise in the same or similar circumstances."  See Walters v. UPMC Presbyterian Shadyside, 187 A.3d 214, 221 (Pa. 2018) (citation and internal quotation marks omitted).  Under Pennsylvania law, a negligence claim "requires a showing of four elements: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the injury in question; and (4) the plaintiff incurred actual loss or damage."  See Pyeritz v. Com., 32 A.3d 687, 692 (Pa. 2011) (citation omitted).

Here, the Court finds that Plaintiff's amended complaint falls well-short of plausibly alleging these elements.  More specifically, the Court finds that Plaintiff's amended complaint contains only the legal conclusion that "[t]he BOP/United States acted negligently . . . by failing to provide proper treatment and follow-up care, resulting in permanent damage/injury."  (Doc. No. 15 at 5.)  Indeed, Plaintiff's amended complaint fails to allege any facts that would describe the manner in which the United States, through its employees, breached its duty or how such an alleged breach caused the injuries allegedly sustained by Plaintiff.  While the Court must liberally construe pro se pleadings, such as the amended complaint filed here, Plaintiff is still required to plead facts sufficient to provide the United States with fair notice of the grounds upon which his claim for negligence rests.  See Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); Erickson, 551 U.S. at 93 (explaining that this short and plain statement must give the defendant fair notice of what the plaintiff's claims are and the grounds upon which those claims rest). Broad and general allegations concerning his fractured hand, the surgery he underwent, and the

8

various medical complications he endured thereafter, are far too vague and imprecise to provide the United States with such fair notice. Thus, for all of these reasons, Plaintiff's amended complaint fails to plausibly allege the second and third elements of a negligence claim under Pennsylvania law—i.e., breach of a duty and causation. As a result, the Court concludes that Plaintiff's amended complaint fails to state an FTCA claim for negligence upon which relief can be granted. The Court will, therefore, dismiss Plaintiff's FTCA claim.

**B.**   <u>**Bivens**</u>

"In 1871, Congress passed a statute that was later codified at Rev. Stat. § 1979, 42 U.S.C. § 1983." <u>Ziglar v. Abbasi</u>, 137 S. Ct. 1843, 1854 (2017) ("<u>Abassi</u>"). This statute "entitles an injured person to money damages if a state official violates his or her constitutional rights." <u>See id.</u> Congress, however, "did not create an analogous statute for federal officials." <u>See id.</u> In other words, Congress did not provide a money damages remedy for persons whose constitutional rights were violated by federal officials. <u>See id.</u>

One-hundred years later in 1971, the United States Supreme Court decided <u>Bivens</u>. <u>See id.</u> In that case, the Supreme Court held that there is an implied cause of action for money damages when a federal official, "acting under color of his authority, conducts an unreasonable search and seizure in violation of the Fourth Amendment." <u>See Shorter v. United States</u>, 12 F.4th 366, 371 (3d Cir. 2021) (citing <u>Bivens</u>, 403 U.S. at 389, 397)). The Supreme Court recognized that "the Fourth Amendment does not in so many words" provide for an award of money damages as a consequence of its violation, but nevertheless explained that, "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." <u>See</u> <u>Bivens</u>, 403 U.S. at 396 (citation and internal quotation marks omitted).

9

In the decade following <u>Bivens</u>, the Supreme Court implied a cause of action for money damages pursuant to <u>Bivens</u> in two (2) other contexts: one under the Fifth Amendment's Due Process Clause for gender discrimination in the employment context, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228, 248-49 (1979); and the other under the Eighth Amendment's Cruel and Unusual Punishment Clause in the prison medical care context, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14, 23-25 (1980).  <u>See</u> <u>Bistrian v. Levi</u>, 912 F.3d 79, 89 (3d Cir. 2018); <u>Shorter</u>, 12 F.4th at 371.

In 2017, however, the United States Supreme Court "made clear" in <u>Abbasi</u> that any further expansion of <u>Bivens</u> "is now a disfavored judicial activity."  <u>See</u> 137 S.Ct. at 1857 (citation and internal quotation marks omitted); <u>Hernandez v. Mesa</u>, 140 S.Ct. 735, 741 (2020) (explaining that, after the Supreme Court's decisions in <u>Davis</u> and <u>Carlson</u>, "the Court changed course"); <u>Mack v. Yost</u>, 968 F.3d 311, 318 (3d Cir. 2020) (explaining that "the Supreme Court has consistently refused to expand <u>Bivens</u> actions beyond these three specific contexts"—<u>i.e.</u>, <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>).

Thus, in order to curb any further expansion of <u>Bivens</u>, the Supreme Court has established a rigorous two (2)-part inquiry for courts to follow when determining whether a <u>Bivens</u> action should be extended to a new context.  <u>See</u> <u>Bistrian</u>, 912 F.3d at 89-90 (citing <u>Abbassi</u>, 137 S.Ct. at 1859-60); <u>Shorter</u>, 12 F.4th at 372.  More specifically, courts must first determine "whether a case presents a new <u>Bivens</u> context" by asking "[i]f the case is different in a meaningful way from previous <u>Bivens</u> cases decided by [the Supreme] Court[.]"  <u>See</u> <u>Ziglar</u>, 137 S.Ct. at 1859.  "If a case does not present a new <u>Bivens</u> context, the inquiry ends there, and a <u>Bivens</u> remedy is available."  <u>Shorter</u>, 12 F.4th at 372 (citation omitted).

If, however, a case presents a new <u>Bivens</u> context, then courts must next determine "whether any 'special factors counsel[ ] hesitation'" in permitting an extension of the doctrine.

10

See id. (quoting Abbasi, 137 S.Ct. at 1857-58).  "There may be many such factors, but two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles."  Bistrian, 912 F.3d at 90 (citing Abbasi, 137 S.Ct. at 1857-58).  Other factors include:

> the potential cost to the government of recognizing a private cause of action, both financially and administratively; whether the judiciary is well suited to weigh those costs; the necessity to deter future violations; whether Congress has already acted in that arena, suggesting it does not "want the Judiciary to interfere"; whether a claim addresses individual conduct or a broader policy question; whether litigation would intrude on the function of other branches of government; and whether national security is at stake.

See id. (quoting Abbasi, 137 S.Ct. at 1856-63).

More recently, however, on June 8, 2022, the Supreme Court decided Egbert v. Boule, 142 S. Ct. 1793 (2022).  In that case, the Supreme Court clarified the framework that courts are to use before implying a cause action for money damages in a new Bivens context.  In particular, the Supreme Court recognized its precedents that describe the two (2)-part inquiry, but explained that these two (2) parts "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  See id. at 1803.  The Supreme Court further explained that, "[i]f there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy."  See id. (citation and internal quotation marks omitted)).  Thus, the outcome of Egbert is—essentially—that extending a Bivens remedy to a new context will be unavailable in all but the most unusual of cases.  See id. (instructing that "[i]f there is a rational reason" to think that Congress is better equipped to create a damages remedy, "as it will be in most every case, . . . no Bivens action may lie").

Here, Plaintiff asserts a Bivens claim against Defendants Moclock, Piedro, and Ball based upon allegations that they violated his rights under the Eighth Amendment in connection

with the allegedly inadequate medical care he received for his hand at FCI Allenwood Low.

(Doc. No. 15 at 5.)  As discussed above, the Supreme Court has already recognized a <u>Bivens</u>

action for inadequate medical care in violation of the Eighth Amendment, and thus, the Court

finds that Plaintiff's Eighth Amendment claim does not present a new <u>Bivens</u> context.  <u>See, e.g.,</u>

<u>see</u> <u>Carlson</u>, 446 U.S. at 23-25 (extending a <u>Bivens</u> remedy to a prisoner's claim that prison

officials violated his Eighth Amendment right to receive adequate medical care).  As such, the

Court concludes that a <u>Bivens</u> remedy extends to Plaintiff's Eighth Amendment claim against

Defendants Moclock, Piedro, and Ball.

The Court now turns to an overview of the Eighth Amendment.  The United States

Constitution "does not mandate comfortable prisons, . . . but neither does it permit inhumane

ones, and it is now settled that the treatment a prisoner receives in prison and the conditions

under which he is confined are subject to scrutiny under the Eighth Amendment[.]"  <u>See</u> <u>Farmer</u>

<u>v. Brennan</u>, 511 U.S. 825, 832 (1994) (citation and internal citation and quotation marks

omitted).  In the context of prison medical care, the Eighth Amendment "requires prison officials

to provide basic medical treatment to those whom it has incarcerated."  <u>See</u> <u>Rouse v. Plantier</u>,

182 F.3d 192, 197 (3d Cir. 1999); <u>Farmer</u>, 511 U.S. at 832 (explaining that the Eighth

Amendment imposes a duty on prison officials to, <u>inter</u> <u>alia</u>, ensure that prisoners receive

adequate medical care (citations omitted)).  As explained by the United States Supreme Court,

prison officials violate the Eighth Amendment "when they are deliberately indifferent to an

inmate's serious medical need."  <u>See</u> <u>Dooley v. Wetzel</u>, 957 F.3d 366, 374 (3d Cir. 2020) (citing

<u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).

"[T]he concept of a serious medical need . . . has two components, one relating to the

consequences of a failure to treat and one relating to the obviousness of those consequences."

See Colburn v. Upper Darby Twp., 946 F.2d 1017, 1023 (3d Cir. 1991).  The "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death[,]" and "the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  See id. (citation and internal quotation marks omitted).

The concept of "deliberate indifference" requires that the prison official actually knew of and disregarded "an excessive risk to inmate health or safety[.]"  See Farmer, 511 U.S. at 837.  This means that the prison official was aware of facts from which the inference could be drawn that an excessive risk of harm exists, and the prison official must also draw that inference.  See id.  The United States Court of Appeals for the Third Circuit ("Third Circuit") has found deliberate indifference when a "prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  See Rouse, 182 F.3d at 197 (citation omitted).

Here, even if the Court accepts that Plaintiff's amended complaint has sufficiently alleged a serious medical need concerning his hand, the Court finds that it has not alleged facts upon which the inference could be made that Defendants Moclock, Piedro, or Ball acted with any deliberate indifference to that need.  More specifically, there are no allegations in the amended complaint that these Defendants actually knew of and disregarded an excessive risk to Plaintiff's health or safety.  See Farmer, 511 U.S. at 837 (explaining that the prison official must be aware of facts from which the inference could be drawn that an excessive risk of harm exists, and the prison official must also draw that inference).  Accordingly, the Court concludes that

Plaintiff's amended complaint fails to state an Eighth Amendment claim upon which relief can be granted. As such, Plaintiff's <u>Bivens</u> claim will be dismissed.

### C.     Leave to Amend

The final issue is whether Plaintiff should be granted leave to amend his amended complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]" <u>See</u> <u>id.</u> The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." <u>See</u> <u>In re NAHC, Inc. Sec. Litig.</u>, 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court cannot say that granting Plaintiff a final opportunity to amend his pleading would be futile and, thus, the Court will grant Plaintiff leave to file a third amended complaint in order to attempt to cure the deficiencies identified above. Plaintiff is advised that his third amended complaint must be complete in all respects. It must be a new pleading that stands by itself without reference to the original complaint, amended complaint, or any other document already filed. His third amended complaint shall set forth the

14

claims in short, concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure.  Finally, neither conclusory allegations nor broad allegations will set forth a cognizable claim.

## IV.    CONCLUSION

To conclude, the Court will dismiss Plaintiff's amended complaint (Doc. No. 15) for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2). Plaintiff will be afforded a final opportunity to amend his pleading.  An appropriate Order follows.